JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Deraybo Williams appeals his convictions for rape, attempted rape, kidnapping with a sexual motivation specification, and two counts of aggravated burglary. He also appeals his sexual predator classification. He assigns the following two errors for our review:
 "I. The appellant's convictions for rape, attempted rape, kidnapping, and aggravated burglary were against the manifest weight of the evidence."
 "II. The evidence is insufficient, as a matter of law, to prove `by clear and convincing evidence' that appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 2} Having reviewed the record and pertinent law, we affirm Williams' convictions and the sexual predator classification. The apposite facts follow.
 {¶ 3} Williams waived his right to a jury trial; therefore, the matter proceeded before the bench.
 Bench Trial {¶ 4} The victim lived in an apartment located on Detroit Avenue in Cleveland, Ohio with her three young children. On June 21, 2006, at around 4:10 a.m., the victim woke up to find Williams sitting on the end of the couch upon which she was sleeping. Also in the apartment was Williams' co-defendant Charles Ford. The victim recognized the men from the neighborhood and had once loaned Williams forty dollars to buy diapers and food for his baby. *Page 4 
 {¶ 5} The victim grabbed a baseball bat and ordered Williams to leave the house. Williams struggled with the victim and grabbed the bat from her. He made her perform oral sex on him, while threatening her with the baseball bat. The victim pleaded with Charles Ford to help her. Williams then told Ford if she calls his name again, to "murk her." The victim understood this to mean Ford was to kill her if she begged for his help again.
 {¶ 6} Williams then told her that she could either continue in the easy way or the hard way. The easy way would be to go into the bedroom and do what he wanted. The hard way was he would force her and "then she would not make it to take her kids to school" the next morning. The victim was afraid for her children's safety and agreed to go into the bedroom with him.
 {¶ 7} Once she was in the bedroom, she convinced Williams to allow her to open her window. As she did so, she jumped from the second story window. Williams grabbed her shirt as the victim exited the window. The shirt ripped in half freeing Williams to fall to the ground. Half naked, she ran to her neighbor's apartment, pounded on the door, and screamed, "He's trying to rape me!" The neighbor did not own a phone. She, therefore, walked with the victim towards her apartment and saw Williams and Ford coming down the stairs. The neighbor confronted the men. Williams denied raping the victim and told the neighbor the victim was hallucinating. He and Ford then ran off. *Page 5 
 {¶ 8} The neighbor escorted the victim to her apartment to check on the children and to call the police. Officer Jason Hyrn was the responding officer. He testified the victim was very upset, shaking, and crying. She did not appear intoxicated or under the influence of drugs. He noted the screen on the second floor bedroom window was pushed out and on the ground below was the victim's bra and white t-shirt. Three palm prints were lifted from the broken kitchen window. Two of the palm prints matched DeRaybo Williams' palm print.
 {¶ 9} The emergency room doctor testified that redness on the victim's wrists indicated pressure was applied to that area. The victim also reported upper back pain, which was consistent with a person jumping from ten to fourteen feet and landing on her feet. The victim reported no ejaculation occurred, but an oral swap was taken of the victim's mouth. The doctor noted the victim was tearful at times, but alert and oriented.
 {¶ 10} Williams presented several witnesses in his defense who alleged that the victim often entertained teenagers in her home and bought them marijuana and alcohol. Ronald Blake testified he previously dated the victim and that Charles Ford lived with her as a run away for three months.
 {¶ 11} The State presented rebuttal witnesses who testified that the victim did allow teenagers in her home to babysit her children and use the computer. They testified that the victim did not drink alcohol or consume drugs and was a good mother. *Page 6 
 {¶ 12} The trial court found Williams guilty of all charges consisting of rape, attempted rape, kidnapping with a sexual motivation specification, and two counts of aggravated burglary. The trial court classified Williams as a sexual predator and sentenced him to a total of thirteen years in prison.
 Manifest Weight of the Evidence {¶ 13} In his first assigned error, Williams contends his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 14} When the argument is made that a conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. InState v. Wilson,[1] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins
(1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a *Page 7 
trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 15} Williams contends the victim's credibility was questionable because she was taking two different kinds of medications for depression and anxiety, and a pill to aid her with sleeping, which all could have caused her to hallucinate. The emergency room doctor stated that such medications could affect a person's ability to perceive an event. However, he also stated the victim did not appear to be intoxicated or under the influence of drugs, and, that she was able to give a detailed account of the event. In fact, all the witnesses that spoke with the victim that morning testified she was alert and oriented and did not appear to be under the influence of drugs or alcohol. Therefore, although the medications could affect a person's perceptions, it appears it did not affect the victim in such a way.
 {¶ 16} Williams also contends the victim's testimony was not credible because conflicting evidence was presented. First, Williams contends the victim testified a female doctor examined her and that no male doctor was present. However, the emergency room physician testified that sometimes patients do not think he is a doctor because he dresses in dark blue scrubs and does not wear a white lab coat. He also stated that a female nurse is in the room at all times and conducts the swabbing. Therefore, it is plausible the victim thought the nurse was the doctor. *Page 8 
Moreover, her failure to recall the gender of her doctor after such a traumatic event does not make her testimony incredible.
 {¶ 17} Williams also contends there was conflicting evidence presented regarding whether his co-defendant Charles Ford lived with the victim for three months and had caused water damage to the floor, which had angered the victim. The State's rebuttal witnesses testified that Charles Ford did not live with the victim. The victim and her current landlord denied any water damage had occurred. We conclude this conflicting evidence is not significant and does not rise to the level of the verdicts being against the manifest weight of the evidence.
 {¶ 18} Williams also contends the fact the victim socialized with teenagers and provided them with alcohol and marijuana impacts her credibility. The State presented rebuttal witnesses who testified that the teenagers helped the victim by babysitting, and that it would have been out of character for her to buy marijuana and alcohol for teenagers. Williams also contends the fact that there was no DNA evidence impacts the victim's credibility. However, the victim testified that Williams did not ejaculate. Therefore, it is not surprising that no DNA evidence was recovered.
 {¶ 19} Although Williams contends the victim's injuries were not consistent with jumping out of a second story window, the emergency room doctor testified the victim's complaint of upper back pain was consistent with a person jumping from ten to fourteen feet high and landing on her feet. *Page 9 
 {¶ 20} Also, the point of entry into the victim's home had two of Williams' palm prints on it. Although the victim testified that Williams had been to her house on one prior occasion, the fact his hand prints were recovered from the point of entry gives more weight to her testimony that Williams broke into her home to commit the acts.
 {¶ 21} Finally, prior to pronouncing its verdict the trial court indicated that it found the victim to be a credible witness. It stated as follows:
 "In this case, the credibility of the [victim] was established significantly by her demeanor and appearance on the witness stand. It was palpable how upset she remains months later by the incidents she described. There are certain inconsistencies and no case is ever 100 percent. * * * On balance, however, I find the testimony of [the victim], as corroborated by the medical evidence, by the testimony of [the neighbor], and taking all the evidence as a whole, the State has met its burden well beyond a reasonable doubt."[2]
 {¶ 22} Because the trier of fact is in the best position to observe the witness' demeanor, voice inflection, and mannerisms in determining each witness' credibility,[3] we defer to the fact finder on issues of credibility, especially when the conflicting evidence is insignificant. Accordingly, Williams' first assigned error is overruled.
 Sexual Predator Classification {¶ 23} In his second assigned error, Williams contends the trial court erred by classifying him as a sexual predator. We disagree. *Page 10 
 {¶ 24} The Ohio Supreme Court has recently held the applicable standard of review for a sexual-predator classification is the civil manifest-weight-of-the-evidence standard.[4] Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court.[5] The factual findings are presumed to be correct since the trial court is in the best position to determine credibility.[6] This court may not reverse a sexual-predator classification "simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."[7]
 {¶ 25} In Wilson, the Court outlined the proper procedure that an appellate court must undertake when reviewing a decision classifying a criminal defendant as a sexual predator. The court must "evaluate * * * the trial judge's rationale [and] any of the evidence the judge cited in support of his decision * * *."[8] In so doing, the court must bear in mind that "[m]ere disagreement with the trial court's findings is not sufficient to overturn them."[9] After such a review, the court must affirm the *Page 11 
classification if there is some competent, credible evidence that goes to each of its essential elements.
 {¶ 26} When deciding whether a defendant is a sexual predator, the trial court is to consider the non-exhaustive list of criteria set forth in R.C. 2950.09(B)(3). However, a trial court is not required to find a specific number of factors under R.C. 2950.09(B)(3) before it can adjudicate an offender a sexual predator, so long as its determination is grounded upon clear and convincing evidence.[10] Moreover, R.C.2950.09(B) does not require that each factor be met; it simply requires the trial court to consider those factors that are relevant.[11]
 {¶ 27} In the instant case, the trial court cited the following factors in determining that Williams was a sexual predator: (1) he scored in the high-risk category for sexual recidivism as established by the Static 99 test;[12] (2) he had a "number of prior, quote, adult and juvenile cases and the only one of those that is of particular concern is a juvenile robbery" in 2004;[13] (3) he used violence and threats of violence to commit the offense;[14] (4) he had a history of drug usage; and, (5) he was diagnosed with antisocial personality based upon his "juvenile misconduct and *Page 12 
pervasive and persistent personality features or disregarding the rights of others, impulsivity, reckless behavior, failure to conform to lawful behavior and consistent irresponsibility."[15]
 {¶ 28} The evidence considered by the trial court was both competent and credible. While Williams asks this court to reweigh the evidence presented below, our review is limited to determining whether some competent, credible evidence supports the elements of the classification. With such evidence in the record, our inquiry is at an end. Accordingly, Williams' second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and ANN DYKE, J., CONCUR.
[1] 113 Ohio St. 3d 382, 2007-Ohio-2202.
[2] Tr. at 854-855.
[3] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[4] State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202.
[5] Id. at ¶ 24, citing CE. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
[6] Id., citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80-81.
[7] Id.
[8] Id. at ¶ 26.
[9] Id.
[10] State v. Purser, 153 Ohio App.3d 144, 149, 2003-Ohio-3523.
[11] State v. Grimes (2001), 143 Ohio App.3d 86, 89.
[12] Tr. at 874.
[13] Tr. at 875.
[14] Tr. at 875.
[15] Tr. at 875. *Page 1